## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUAN PHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. _____ |
| | ) |
| AETNA, INC., MARK T. BERTOLINI, ELLEN M. | )    **JURY TRIAL DEMANDED** |
| HANCOCK, BETSY Z. COHEN, FRANK M. | ) |
| CLARK, EDWARD J. LUDWIG, JEFFREY E. | )    **CLASS ACTION** |
| GARTEN, FERNANDO AGUIRRE, MOLLY J. | ) |
| COYE, RICHARD J. HARRINGTON, JOSEPH P. | ) |
| NEWHOUSE, ROGER N. FARAH, AND | ) |
| OLYMPIA J. SNOWE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Luan Pham ("Plaintiff"), by his attorneys, alleges upon information and belief, except for her own acts, which are alleged on knowledge, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff, a stockholder of Aetna, Inc. ("Aetna" or the "Company") brings this action against the members of Aetna's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §§ 240.14a-9, 244.100, & 229.1015(b)(4), arising out of their attempt to sell the Company to CVS Health Corporation ("CVS").

2.      On December 3, 2017, the Board caused the Company to enter into a definitive agreement and plan of merger (the "Merger Agreement"), by which CVS will acquire all of the outstanding shares of the Company's common stock in a cash and stock transaction in which Aetna stockholders will receive 0.8378 (the "Exchange Ratio") shares of CVS common stock (the "Share

Consideration") and $145.00 in cash (the Cash Consideration," and with the Share Consideration, the "Merger Consideration") for a total approximate value of $207.94 per share (the "Proposed Transaction").

3.      The Merger Consideration implies a total equity value for the Company of approximately $77 billion.

4.      On January 4, 2018, the Defendants and CVS caused the filing of a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities & Exchange Commission (the "SEC").  The Registration Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding (i) financial projections for Aetna; and (ii) the valuation analyses performed by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard"), in support of its fairness opinion.

5.      Without additional information the Registration Statement is materially misleading in violation of federal securities laws.

6.      By unanimously approving the Proposed Transaction and authorizing the issuance of the Registration Statement, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Registration Statement was materially false and/or misleading. The Registration Statement is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

7.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of Aetna common stock or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Aetna is incorporated in this District or maintains its headquarters in this District.

## PARTIES AND RELEVANT NON-PARTIES

11.     Plaintiff is, and has been at all relevant times, the owner of Aetna common stock.

12.     Defendant Aetna is incorporated in Pennsylvania and maintains its principal executive offices at 151 Farmington Avenue, Hartford, Connecticut, 06156. The Company's common stock trades on the New York Stock Exchange under the ticker symbol "AET".

13.     Defendant Mark T. Bertolini is, and has been since 2010, a director of the Company and currently serves as the Chairman and Chief Executive Officer of the Company.

14.     Defendant Ellen M. Hancock is, and has been since 1995, a director of the Company.

15.     Defendant Betsy Z. Cohen is, and has been since 1994, a director of the Company.

16.     Defendant Frank M. Clark is, and has been since 2006, a director of the Company.

17.     Defendant Edward J. Ludwig is, and has been since 2003, a director of the Company and currently serves as the Lead Independent Director of the Company.

18.     Defendant Jeffrey E. Garten is, and has been since 2000, a director of the Company.

19.     Defendant Fernando Aguirre is, and has been since 2011, a director of the Company.

20.     Defendant Molly J. Coye is, and has been since 2005, a director of the Company.

21.     Defendant Richard J. Harrington is, and has been since 2008, a director of the Company.

22.     Defendant Joseph P. Newhouse is, and has been since 2001, a director of the Company.

23.     Defendant Roger N. Farah is, and has been since 2007, a director of the Company.

24.     Defendant Olympia J. Snowe is, and has been since 2014, a director of the Company

25.     Defendants referenced in ¶¶ 14 through 24 are collectively referred to as Individual Defendants and/or the Board.

**FURTHER SUBSTANTIVE ALLEGATIONS**

26.     On December 3, 2017, the Company and CVS issued a joint press release announcing the Proposed Transaction. The Press Release read in relevant part:

> WOONSOCKET, R.I. and HARTFORD, Conn., Dec. 3, 2017 /PRNewswire/ -- CVS Health (NYSE: CVS), a company at the forefront of changing the health care landscape, and Aetna (NYSE: AET), one of the nation's leading diversified health care benefits companies, today announced the execution of a definitive merger agreement under which CVS Health will acquire all outstanding shares of Aetna for a combination of cash and stock. Under the terms of the merger agreement, which has been unanimously approved today by the boards of directors of each company, Aetna shareholders will receive $145.00 per share in cash and 0.8378 CVS Health shares for each Aetna share. The transaction values Aetna at approximately $207 per share or approximately $69 billion.

Including the assumption of Aetna's debt, the total value of the transaction is $77 billion.

This transaction fills an unmet need in the current health care system and presents a unique opportunity to redefine access to high-quality care in lower cost, local settings whether in the community, at home, or through digital tools.

CVS Health President and Chief Executive Officer Larry J. Merlo said, "This combination brings together the expertise of two great companies to remake the consumer health care experience. With the analytics of Aetna and CVS Health's human touch, we will create a health care platform built around individuals. We look forward to working with the talented people at Aetna to position the combined company as America's front door to quality health care, integrating more closely the work of doctors, pharmacists, other health care professionals and health benefits companies to create a platform that is easier to use and less expensive for consumers."

This is a natural evolution for both companies as they seek to put the consumer at the center of health care delivery. CVS Health has steadily become an integrated health care company, and Aetna has moved beyond being a traditional insurer to focus more on consumer well-being.

"This is the next step in our journey, positioning the combined company to dramatically further empower consumers. Together with CVS Health, we will better understand our members' health goals, guide them through the health care system and help them achieve their best health," said Mark T. Bertolini, Aetna chairman and CEO. "Aetna has a proud tradition of continually innovating to address unmet consumer needs and providing leading products and services to the marketplace."

Bertolini continued, "Aetna has a talented and dedicated group of employees working to build a healthier world every day. Our combined company will be more competitive in the marketplace and accelerate progress toward achieving this mission."

Today, increasing numbers of consumers are taking on more and more responsibility for paying for their health care as the burden of costs is being shifted to them. Together, CVS Health and Aetna will be a trusted community partner who will help consumers better manage the cost of the health care they need. The combined company will also be well positioned to more effectively meet the health needs of many more people, especially the 50 percent of Americans with chronic conditions that account for more than 80 percent of all health care costs. Finally, capabilities developed following this transaction will directly benefit clients of both companies and enable them to better manage their health care costs.

******

**TRANSACTION DETAILS**

**Transaction Terms**

Under the terms of the merger agreement, each outstanding share of Aetna common stock will be exchanged for $145.00 in cash and 0.8378 shares of CVS Health common stock. Upon closing of the transaction, Aetna shareholders will own approximately 22% of the combined company and CVS Health shareholders will own approximately 78%. The transaction is expected to close in the second half of 2018. It is subject to approval by CVS Health and Aetna shareholders, regulatory approvals and other customary closing conditions.

******

**Governance Details**

Upon the closing of the transaction, three of Aetna's directors, including Aetna's Chairman and CEO Mark T. Bertolini, will be added to the CVS Health Board of Directors. In addition, members of the Aetna management team will play significant roles in the newly combined company. Aetna will operate as a stand-alone business unit within the CVS Health enterprise and will be led by members of their current management team.

**The Registration Statement Misleads Aetna Stockholders by Omitting Material Information**

27.     On January 4, 2018, the Company filed the materially misleading and incomplete Registration Statement with the SEC.  Designed to convince stockholders to vote in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning the Company's expected future value as a public entity as evidenced by Lazard's financial analyses underlying its fairness opinion.

*Material Omissions Concerning the Company's Financial Projections*

28.     The Registration Statement discloses the Company's projections for several financial measures, including EBITDA, Adjusted EBITDA, Unlevered Free Cash Flow, Adjusted Revenue, and Adjusted Earnings. These projections, however, omit the line items used to calculate these non-GAAP financial metrics.

29.     First, the Registration Statement omits the following line items for EBITDA: (i) interest; (ii) taxes; (iii) depreciation; and (iv) amortization. These values are omitted despite the Registration Statement's definition of EBITDA as "earnings before interest, taxes, depreciation and amortization, excluding certain one time non-recurring items, as applicable."

30.     Second, the Registration Statement defines Adjusted Revenue as "Total Revenue excluding net realized capital gains or losses and other items, if any, that neither relate to the ordinary course of Aetna's business nor reflect Aetna's underlying business performance. But the Registration Statement omits any values for (i) total revenue; and (ii) any projected net realized capital gains for the years ending December 31, 2017 to 2022.

31.     Third, with respect to Adjusted Earnings, the Registration Statement omits values for: (i) net income, and (ii) net realized capital gains or losses.

32.     With respect to the projections of Adjusted EBITDA, alongside its omissions of the line items for EBITDA, the Registration Statement fails to provide: (i) income, (ii) income taxes, (iii) interest expense, (iv) depreciation and amortization, and (v) net realized capital gains or losses.

33.     Possibly the most important metric, due to its use as the main cash flow input in Lazard's *Discounted Cash Flow Analysis*, the Registration Statement defines Unlevered Free Cash Flow as "Net income, excluding: (i) net realized capital gains or losses, (ii) other items…, (iii) the corresponding income tax benefit or expense related to net realized capital gains…; less (I) risk based capital contributions (distributions, (II) changes in Aetna Inc.'s working capital, (III) after-tax pension plan contributions, (IV) after tax debt retirement premiums, (V) acquisitions ad investments and (VI) after tax Humana related termination fees; plus (a) after-tax net interest, (b) other net cash flow adjustments and (c) capital projected to be released due to the sale of Aetna's domestic group life insurance, group disability insurance and absence management businesses."

However, the Registration Statement fails to provide the line item projections used to calculate this non-GAAP measure.

34.    Furthermore, Defendants must disclose the line items necessary to reconcile these non-GAAP measures to well-known and recognized GAAP measures. Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance.

35.    Because of the non-standardized and potentially manipulative nature of non-GAAP measures, when a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100. The Proxy makes no effort to account for the failure to reconcile these non-GAAP measures to GAAP metrics.

36.    Without disclosure of these reconciling metrics, the Proxy violates SEC regulations and materially misleads Aetna stockholders

37.    These projections were provided to Lazard and the Board, and used by Lazard for the purpose of creating a fairness opinion that could then be used in soliciting stockholder approval of the Proposed Transaction. Because these analyses were presented to the Aetna stockholders as evidence of the fairness of the Proposed Transaction, the omission of the financial projections materially misleads those same stockholders as to the accuracy and value of the analyses.

### *Material Omissions Concerning Lazard's Financial Analyses*

38.    First, the Registration Statement discloses Lazard's *Discounted Cash Flow Analysis*. In presenting a summary of this analysis, however, the Registration Statement omits: (i) CVS and Aetna's terminal value; (ii) the inputs and assumptions underlying the calculation of the perpetuity growth rates ranging from 2.0% to 3.0% used for Aetna; and (iii) the inputs and

assumptions underlying the calculation of the discount rate range of 6.0% to 7.0% used for Aetna.. The omission of this material financial information renders the summary of the Lazard *Discounted Cash Flow Analysis* analyses and the derived values incomplete and misleading.

39.     With respect to Lazard's *Selected Precedent Transactions Analysis*, the Registration Statement omits from its summary the individual multiples calculated by Lazard for each selected transaction. Without such information, Aetna stockholders are unable to determine how the multiples used in determining Aetna's value compare to the other companies and the value of this transaction to the Proposed Transaction. As a result, stockholders are unable to assess whether Lazard utilized unreasonably low multiples thereby rendering the implied share price ranges set forth in the analyses misleading.

40.     With respect to Lazard's *Selected Public Companies Analysis*, the Registration Statement omits from its summary the individual multiples calculated by Lazard for each selected company. Without such information, Aetna stockholders are unable to determine how the multiples used in determining Aetna's value compare to the other companies. As a result, stockholders are unable to assess whether Lazard utilized unreasonably low multiples thereby rendering the implied share price ranges set forth in the analyses misleading

41.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Aetna**

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Aetna is liable as the issuer of these statements.

65.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

66.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

67.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

68.     The Registration Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants**

71.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72.     The Individual Defendants acted as controlling persons of Buffalo Wild Wings within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Aetna and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

75.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  January 26, 2018                    **LEVI & KORSINSKY, LLP**

By: *s/ Shannon L. Hopkins*
Shannon L. Hopkins
733 Summer Street, Suite 304
Stamford, CT 06901
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email:  shopkins@zlk.com.com


**OF COUNSEL**

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
        etripodi@zlk.com

*Attorneys for Plaintiff*

**CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, Luan Pham, declare as to the claims asserted under the federal securities laws, as follows:

1. I have reviewed the Complaint and authorized its filing.

2. I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation.

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. I currently hold shares of Aetna Inc. My purchase history is as follows:

| Purchase Date | Stock Symbol | Shares Transacted | Price Per Share |
|---|---|---|---|
| 7/26/13 | AET | 200 | 62 |
| 5/5/14 | aet | 200 | 71.44 |

5. During the three years prior to the date of this Certification, I have not participated nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this January 25, 2018, at Houston, TX.

Name: Luan Pham

Signed: